IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MYRA KNOWLTON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-06-854 |
| AMERICAN AIRLINES, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Myra Knowlton ("Plaintiff" or "Knowlton") has brought this breach of contract claim against American Airlines, Inc. ("Defendant" or "AA") because she contends that she was not provided a free breakfast as promised on an American Airlines flight in November of 2005. On March 3, 2006, she filed a one-count complaint in the Circuit Court for Baltimore County on behalf of herself and similarly situated persons whom she also contends were denied a free breakfast. On March 31, 2006, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(b), alleging that Plaintiff's claim arose under either the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention") or the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention"). Pending before this Court is Plaintiff's Motion to Remand (Paper No. 13). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Plaintiff's Motion to Remand is DENIED.

BACKGROUND

In November of 2005, Plaintiff Myra Knowlton booked a round-trip ticket with American Airlines to fly from BWI Airport in Baltimore, Maryland to the Dominican Republic, connecting

through San Juan, Puerto Rico on the first leg of the trip and Miami, Florida on the return trip. Plaintiff received an electronic confirmation of her travel itinerary from AA which included the notation "breakfast" on the flight from BWI Airport to San Juan on January 26, 2006. According to Knowlton, this notation created a contractual obligation between herself and the Defendant for the airline to provide her with a complimentary breakfast. However, Plaintiff did not receive a free breakfast while on that flight. Rather, she was told that AA no longer provides complimentary meals and that she could purchase breakfast for $3.00.

On March 3, 2006, Plaintiff filed a class action complaint against the Defendant in the Circuit Court for Baltimore County, Maryland on behalf of herself and others similarly situated, alleging breach of contract. On March 31, 2006, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1441(b), alleging that Plaintiff's cause of action arises under either the Warsaw or Montreal Convention and is therefore a federal question. On April 28, 2006, Plaintiff filed a Motion to Remand arguing that removal was improper because her breach of contract claim does not arise under the Warsaw and Montreal Conventions. The treaties, she argues, only address claims for personal injury, property damage, and damage caused by delay arising during international flights. Defendant responds that even though the Montreal Convention did not specifically discuss carrier liability for the alleged breach of contract at issue in this case, the treaty nonetheless completely preempts Plaintiff's claim.[1]

---

[1] In its Notice of Removal, Defendant argued that Plaintiff's claim arises under either the Warsaw Convention or the Montreal Convention. (*See* Notice of Removal ¶¶ 4-5.) Defendant later explained that it could not determine which of the two treaties applies because Plaintiff's complaint did not specify whether the flight in question was one-way or part of a round-trip ticket. (*See* Def.'s Mem. Opp'n Mot. Remand 8-9.) Both treaties apply to flights between countries that are members of the treaty as well as round-trip flights from a member country where at least one stop is in a different country. Warsaw Convention at art. 1 ¶ 2; Montreal

STANDARD OF REVIEW

The burden of establishing federal jurisdiction rests with the party seeking removal. *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 583-84 (4th Cir. 2006) (citing *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994)).  Removal jurisdiction raises "significant federalism concerns," and therefore must be strictly interpreted.  *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151).  In other words, "'[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'"  *Dixon*, 369 F.3d at 816 (alterations in original) (quoting *Mulcahey*, 29 F.3d at 151 (citations omitted)).  This strict policy against removal and for remand protects the sovereignty of state governments and state judicial power.  *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

ANALYSIS

**I.     The Montreal Convention**

The Convention for the Unification of Certain Rules for International Carriage by Air, otherwise known as the Montreal Convention, was signed in that city on May 28, 1999, and

---

Convention at art. 1 ¶ 2.  Plaintiff's destination was the Dominican Republic, which is a party to the Warsaw Convention but not the Montreal Convention.  *See* U.S. Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2006, *available at* http://www.state.gov/documents/organization/65515.pdf (last visited Dec. 19, 2006).  Thus, a one-way trip from the United States to the Dominican Republic would only be governed by the Warsaw Convention while a round-trip ticket would be governed by the superseding Montreal Convention.  See *infra* Analysis Part I for a comparison of the two treaties and a discussion of which applies in this case.  Now that it is clear that Plaintiff's ticket was round-trip, Defendant argues for preemption solely by the Montreal Convention.  (*Id.*)

3

entered into force on November 4, 2003.  *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106-45 [hereinafter "the Montreal Convention"].  The United States is a party to the Montreal Convention.[2]  The Montreal Convention supersedes the much older Warsaw Convention.  Article 55 of the Montreal Convention, entitled "Relationship with Other Warsaw Convention Instruments," provides:

> This Convention shall prevail over any rules which apply to international carriage by air:  1. between States Parties to this Convention by virtue of those States commonly being party to (a) the [Warsaw Convention]; (b) [the Hague Protocol]; . . . (e) [the Montreal Protocol]; or 2. Within the territory of any single State Party to this Convention by virtue of that State being Party to one or more of the instruments referred to in sub-paragraphs (a) to (e) above.

Montreal Convention at art. 55.  Like its predecessor, the Montreal Convention's purpose is to promote uniformity in the laws governing airliner liability for the "international carriage of persons, baggage or cargo performed by aircraft."  *Id*. at art. 1.  However, the Montreal Convention is unique in that it "represents a significant shift away from a treaty that primarily favored airlines to one that continues to protect airlines from crippling liability, but shows increased concern for the rights of passengers and shippers."  *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 364-65 (S.D.N.Y. 2006).

The Montreal Convention imposes three categories of strict liability on air carriers.  Article 17 provides for carrier liability in the event of accidental death or bodily injury of a passenger while on board, embarking, or disembarking the plane.  Montreal Convention at art.

---

[2] *See* U.S. Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2006, *available at* http://www.state.gov/documents/organization/65515.pdf (last visited Dec. 19, 2006).

17. Article 17 also includes liability for damage to or loss of baggage. *Id*. Article 18 of the Montreal Convention addresses liability for damage to cargo, and Article 19 imposes liability for damages resulting from delay of passengers, baggage, or cargo. *Id*. at arts. 18-19. These categories are meant to be exclusive and encompass the scope of international airline liability. Article 29 of the treaty contains an express statement of exclusivity: "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention. . . ." *Id*. at art. 29.

## II.     Removal Jurisdiction

AA removed Knowlton's claim to this Court pursuant to 28 U.S.C. § 1441(b), alleging that this Court has subject matter jurisdiction over her claim because it arose under an international treaty. Plaintiff filed the instant Motion to Remand, contending that her claim does not arise under a treaty of the United States. Thus, the precise question before this Court is whether the Montreal Convention completely preempts Knowlton's common law breach of contract claim.

### A.     Well-Pleaded Complaint Rule

Whether a claim arises under a federal or international law for removal purposes is determined by the "well-pleaded complaint rule." *See Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998). "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr.*

*Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Plaintiff's Complaint does not mention the Montreal Convention, nor does the treaty "create" her state common law cause of action. Instead, her Complaint simply purports to state a claim for breach of contract. (*See* Compl. ¶¶ 13-19.) Likewise, her right to relief does not "necessarily depend[] on resolution of a substantial question of federal law." Accordingly, Defendant cannot establish removal jurisdiction under the traditional standards of the well-pleaded complaint rule. In limited circumstances, however, the doctrine of complete preemption provides an alternative means of satisfying the well-pleaded complaint rule.

### B.    Complete Preemption

Ordinarily, federal preemption serves as a defense to state law claims. However, as long as the plaintiff's cause of action does not "arise under" federal law, a federal preemption defense cannot serve as the basis of federal question jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Because it cannot support federal question jurisdiction, therefore, ordinary preemption does not authorize removal to federal court. *Id.* Accordingly, this Court must address the issue of complete preemption.

In this case, Defendant has asserted *complete* preemption as the basis for federal question removal jurisdiction. (Def.'s Mem. Opp'n Mot. Remand 5-7.) "Under complete preemption a state claim arises under federal law when Congress 'so completely pre-empts a particular area that any civil complaint raising the select group of claims is necessarily federal in character.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005) (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63-64). "[T]he doctrine of *complete* preemption 'converts an ordinary state common law complaint into one stating a federal claim,' and the federal claim is deemed to appear on the face

6

of the complaint." *Pinney*, 402 F.3d at 449 (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002)) (emphasis added). Thus, if Defendant can show that the Montreal Convention completely preempts Plaintiff's breach of contract claim, then removal was appropriate.

Courts have only been willing to find complete preemption in a very small number of cases.

> The Supreme Court has admonished that federal law should be found to completely preempt state law "only in statutes with 'extraordinary' preemptive force." To date, the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 21 et seq.

*Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1291 (11th Cir. 2004) (citations omitted). It is no surprise, then, that "the Court has articulated exacting standards that must be met before it will find complete pre-emption." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005).

As the Montreal Convention entered into force on November 4, 2003, there is limited authority in its interpretation. At least one lower court has held that the treaty *preempts* state law claims. In *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106 (S.D.N.Y. 2004), the District Court for the Southern District of New York held that the plaintiff's breach of contract claim for a flight cancellation was preempted by both the Montreal and Warsaw Conventions, because the treaties "preempt all state law claims within their scope."[3] *Paradis*, 348 F. Supp. 2d at 111, 114.

---

[3] The court did not actually reach the question of whether the Warsaw or Montreal Convention applied, because it found the two treaties had the same preemptive effect. *Paradis*, 348 F. Supp. 2d at 111.

7

The court noted that the exclusivity provisions of the Montreal and Warsaw Conventions are very similar and that "the preemptive effect is identical." *Id.* at 111. Thus, to supplement the scarce case law on the Montreal Convention, this Court will look to cases analyzing the older Warsaw Convention for guidance.

In *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999), the Supreme Court held that the Warsaw Convention preempts all state-law personal injury actions within its scope, even if damages would not be recoverable under the treaty. (Def.'s Mem. Opp'n Mot. Remand 15.) Accordingly, this Court has previously cited the Supreme Court's opinion in *Tseng* to hold that the Warsaw Convention preempted state law claims. *See Watson v. Am. Airlines, Inc.*, 2002 WL 1359747, at *1 (D. Md. June 20, 2002) (granting motion to dismiss complaint alleging only state law tort claims for food poisoning suffered during international flight). While the Supreme Court did not expressly rule that there was *complete* preemption under the Warsaw Convention, several courts have addressed that issue and taken the position that the Warsaw Convention completely preempts all claims arising out of international flights.[4] *See, e.g., Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir. 1999) (state tort claim for personal injuries); *Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 45 (E.D.N.Y. 2006) (state tort claims for personal injuries); *Donkor v. British Airways, Corp.*, 62 F.Supp. 2d 963, 967 (E.D.N.Y. 1999) (state tort and breach of contract claims for damages due to detention after a long delay).

---

[4] Defendant filed a Notice of Lodging Supplemental Authority (Paper No. 24) to inform this Court of a recent Fifth Circuit Court of Appeals opinion, *Mbaba v. Societe Air France*, 457 F.3d 496 (5th Cir. 2006), in which the court held that breach of contract and fraud claims for excess baggage fees were preempted by the Warsaw Convention. (*See* Def.'s Notice of Lodging Supp'l Auth.) However, *Mbaba* did not address the issue of *complete* preemption in the removal context and is, therefore, distinguishable from this case.

In contrast, Plaintiff points to cases in which state law claims were not preempted by the Warsaw Convention because they were outside the treaty's scope. *See, e.g., Wolgel v. Mexicana Airlines*, 821 F.2d 442 (7th Cir. 1987), *cert. denied,* 484 U.S. 927 (1987) (holding that the plaintiff's claim for non-performance of contract as a result of being "bumped" did not fit into any of the three categories of liability); *O'Callaghan v. AMR Corp*., 2005 WL 1498870, at *1 n.1 (N.D. Ill. Jun. 8, 2005) (holding that breach of contract claim for failure to provide advertised leg room was not preempted by the Warsaw Convention because the "claim s[ought] damages only for the nonperformance of the contract, not for any injury that occurred because of that nonperformance"); *see also Donkor,* 62 F. Supp. 2d at 967 ("[W]hile defendants are correct in their assertion that the Warsaw Convention completely preempts the claims that it governs, they are incorrect to imply that the Convention governs all claims arising out of international transportation.").

There is clearly a split of authority over whether the Montreal Convention and its predecessor completely preempt state law claims such as this one. However, this Court is persuaded by the reasoning of those cases finding in favor of preemption. The treaties were designed to create a uniform system of liability among airlines for claims arising from international flights. *See Tseng*, 525 U.S. at 169 ("Given the [Warsaw] Convention's comprehensive scheme of liability rules and its textual emphasis on uniformity, we would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations."). As a matter of public policy, airlines should not be subject to contract claims in state courts involving a three-dollar breakfast.

Accordingly, Plaintiff's Motion to Remand is DENIED.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand (Paper No. 13) is DENIED.

A separate Order follows.

/s/
Richard D. Bennett
United States District Judge

Date: January 31, 2007